UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

HK SYSTEMS, INC.,

        Plaintiff,

       v.                           Case No. 03-C-0795

ADMIRAL INSURANCE COMPANY,

        Defendant.

DECISION AND ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

        This case concerns an insurer's duty to defend litigation stemming from a July 2002, fire and collapse of a building at the Quad/Graphics, Inc., printing plant in Lomira, Wisconsin. Plaintiff HK Systems, Inc., assisted in construction of the building and at the time of the fire held two insurance policies issued by defendant Admiral Insurance Company. HK Systems notified Admiral of the potential claims against it and was sued thereafter by Quad/Graphics. Admiral chose to defend under a reservation of rights. HK Systems now sues Admiral regarding Admiral's duty to defend, asserting two claims: breach of contract and declaratory judgment.

        HK Systems moves for summary judgment on the declaratory judgment claim. In doing so, it seeks a court order declaring that: (1) Admiral does not have the right to control the defense of or to select counsel for HK Systems in what is known as the "Quad litigation" because it chose to defend under a reservation of rights, (2) Admiral is liable for the legal fees incurred by HK Systems in defense of the Quad litigation, and (3) the rates charged by HK Systems' attorneys in the Quad litigation are reasonable as a matter of law. (Mot. for Partial Summ. J. at 1.)

HK Systems is a Wisconsin corporation headquartered in New Berlin, Wisconsin, which develops, implements and supports integrated solutions for management of enterprise-wide inventory, distribution, logistics management and automated material handling systems. (Pl.'s Proposed Findings of Fact (PPFOF) ¶ 1.[1]) Admiral is a Delaware corporation with its principal place of business in Cherry Hill, New Jersey, doing business in Wisconsin. (*Id.* ¶ 2.)

From November 1, 2001, to November 1, 2002, HK Systems had in effect a commercial general liability (CGL) insurance policy with Admiral, policy number A01AG11803. (*Id.* ¶ 3.) From November 1, 2001, to November 1, 2002, HK Systems also had in effect a professional liability insurance policy with Admiral, policy number A01CB14386. (*Id.* ¶ 5.) The CGL policy and the professional liability policy each have a coverage limit of $1,000,000 per occurrence. (*Id.* ¶ 7.) HK Systems fully paid all of the premiums due under both the CGL policy and the professional liability policy. (*Id.* ¶ 8.)

On July 12, 2002, a catastrophic accident occurred at a printing facility in Lomira, Wisconsin, owned by Quad/Graphics, Inc., involving a collapse and fire of a building within the facility. (*Id.* ¶ 9.) The occurrence resulted in the total destruction of one of the buildings at the Quad/Graphics facility, the death of one individual, and damage to other property in and adjacent to the Quad/Graphics facility. (*Id.* ¶ 11.) HK Systems was significantly involved as a contractor of Quad/Graphics in the construction of the building that collapsed. (*Id.* ¶ 10.)

---

[1]All but one of HK Systems' proposed findings of fact were admitted by Admiral. HK Systems admitted all of Admiral's proposed findings of fact as well, arguing only their meaning. As to the one objection, Admiral admitted part of the proposed finding and objected only to part. Taking the evidence in Admiral's favor, the court has included Admiral's one objection as an undisputed fact.

2

Immediately after the occurrence at the Quad/Graphics facility, HK Systems informed Admiral of the event. (*Id.* ¶ 12.) Within a few days, Quad/Graphics notified HK Systems of its claim for losses suffered as a result of the occurrence. (*Id.* ¶ 13.) Subsequently, other persons notified HK Systems of claims arising from the occurrence. (*Id.* ¶ 14.) HK Systems notified Admiral of these claims also. (*Id.*)

Throughout July and August 2002, HK Systems communicated orally and in writing with Admiral regarding the occurrence. (*Id.* ¶ 15.) During those communications, HK Systems advised Admiral of the actions HK Systems was taking; HK Systems also repeatedly requested that Admiral promptly advise HK Systems as to what Admiral's position was with respect to the occurrence and its duty to defend HK Systems. (*Id.*)

In late July 2002, HK Systems chose the law firm of Mayer, Brown, Rowe & Maw, LLP (Mayer Brown) to be its lead counsel in the defense of claims relating to the collapse and fire at the Quad/Graphics facility. (*Id.* ¶ 16.) On August 28, 2002, Admiral sent a letter to HK Systems advising HK Systems that Admiral was seeking counsel's advice with respect to its obligations to HK Systems relating to the occurrence. (*Id.* ¶ 17.)

On or about September 20, 2002, Admiral, through a letter from counsel, notified HK Systems that it was reserving its rights under both the professional liability policy and the CGL policy. (*Id.* ¶ 18; Stricker Aff., Ex. C at 1.) In the letter, Admiral notified HK Systems that it would not pay the normal hourly rate of the Mayer Brown attorneys. (PPFOF ¶ 19; Stricker Aff., Ex. C at 3.) Instead, Admiral stated it would not pay more than $175 per hour for the Mayer Brown attorneys to defend HK Systems. (PPFOF ¶ 19; Stricker Aff., Ex. C at 3.)

3

HK Systems chose Mayer Brown as its counsel without obtaining approval from Admiral. (Def.'s Proposed Findings of Fact (DPFOF) ¶ 2.) Admiral tendered attorney Robert Burrell of Borgelt, Powell, Peterson & Frauen, S.C., of Milwaukee, to represent HK Systems on the merits of the claims against HK Systems. (*Id.* ¶ 3.) In the letter of September 20, 2002, Admiral wrote that it was "willing to accept HK Systems' selection of the Mayer Brown firm, in lieu of Borgelt Powell, as defense counsel for the claims anticipated from the Quad/Graphics loss, subject to agreement as to the reasonable amount of fees to be charged by that firm for services actually related to defense of the claims." (Stricker Aff., Ex. C at 3.) HK Systems rejected the tender of Burrell as defense counsel. (DPFOF ¶ 4.)

Mayer Brown is a Chicago-based law firm with thirteen hundred lawyers in thirteen cities. Mayer, Brown, Rowe & Maw LLP - Offices, http://www.mayerbrown.com/offices/index.asp (last visited March 23, 2005). The range of hourly rates that Mayer Brown regularly charges for its litigators is: $495 to $700 for senior litigation partners, $375 to $485 for other litigation partners, and $195 to $420 for associates. (PPFOF ¶ 20; McCombs Decl. ¶ 2.) Mayer Brown charges these rates on a regular basis, and its clients, including HK Systems and other clients with matters pending in Wisconsin, pay these rates. (PPFOF ¶ 21; McCombs Decl. ¶ 3.)

Burrell and other members of his firm have litigated issues such as those raised in the Quad litigation on a routine basis. (DPFOF ¶ 5; Burrell Aff. ¶ 4.) Burrell is a senior shareholder litigator, who has been practicing law since 1971. (DPFOF ¶ 9; Burrell Aff. ¶ 1.) HK Systems has not argued that Burrell or his firm were not competent to provide

4

a defense in this case. (DPFOF ¶ 6.) Burrell has not personally represented Admiral in any matter in the last five years. (*Id.* ¶ 7; Burrell Aff. ¶ 5.)

Burrell would have defended this case at a rate of $145 per hour, which represents the customary rate he and his firm charge for the services of senior shareholders in the defense of commercial litigation. (*Id.* ¶ 8; *see* Burrell Aff. ¶¶ 2-3.) According to Burrell, the rate of $145 per hour is the market rate for commercial defense litigation of this nature in Wisconsin. (DPFOF ¶ 10; *see* Burrell Aff. ¶¶ 2-3.)

Quad/Graphics and its insurer eventually brought suit against HK Systems, as well as numerous other parties. (PPFOF ¶ 22.) The case was filed in Dodge County Circuit Court on August 27, 2003. (DPFOF ¶ 1.) It was later transferred to Milwaukee County Circuit Court, and is captioned *Industrial Risk Insurers v. American Engineering Testing, Inc.*, No. 2003-CV-011475. (PPFOF ¶ 22.) The losses claimed by Quad/Graphics in the Quad litigation exceed $60,000,000. (*Id.* ¶ 23.) The potentially available insurance for HK Systems is $37,000,000, including the Admiral policies, but coverage determinations are still pending. (*Id.*; Def.'s Resp. to Pl.'s Proposed Findings of Fact ¶ 23.)

In early 2003, the parties here reached an interim agreement by which Admiral reimburses HK Systems $175 per hour for the services of the attorneys at Mayer Brown, with the understanding that neither the submission of those bills by HK Systems nor the remittance of monies by Admiral constitutes any waiver by either side of their respective positions on the duty to defend. (PPFOF ¶ 24.) Admiral is providing this partial reimbursement to HK Systems under the CGL policy. (*Id.* ¶ 25.)

The CGL policy states: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to

5

which this insurance applies.  We will have the right and duty to defend the insured against any 'suit' seeking those damages." (Stricker Aff., Ex. A at 1 of 13.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of demonstrating it is entitled to summary judgment. *Id.* at 323.  Once this burden is met, the nonmoving party must designate specific facts to support or defend the elements of the cause of action, showing that there is a genuine issue for trial.  *Id.* at 322-24.  The court construes the evidence in the light most favorable to the party opposing the motion.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The mere existence of some factual dispute does not defeat a summary judgment motion; there must be a genuine issue of material fact for the case to survive. *Id.* at 247-48.  "Material" means that the factual dispute must be outcome-determinative under governing law.  *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). To establish that a question of fact is "genuine," the opposing party must present specific and sufficient evidence that, if believed by a jury, would actually support a verdict in its favor.  Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 249.  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

6

DISCUSSION

In this diversity case, state law applies. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Both parties argue Wisconsin substantive law, and no other state's law appears more appropriate. Hence, this court will look to Wisconsin law.

The court must apply substantive law as declared by Wisconsin's highest court. *Home Valu, Inc. v. Pep Boys – Manny, Moe and Jack of Del., Inc.*, 213 F.3d 960, 963 (7th Cir. 2000); *see Erie*, 304 U.S. at 78-79. However, if Wisconsin law is unclear because the Supreme Court of Wisconsin has not spoken on the issue, this court must predict how that court would decide the question. *Rodman Indus., Inc. v. G & S Mill, Inc.*, 145 F.3d 940, 942 (7th Cir. 1998). If the Supreme Court of Wisconsin has not spoken on the issue, state intermediate appellate court decisions are authoritative unless there is a split among those courts or "there is a compelling reason to doubt that the courts have got the law right." *Rekhi v. Wildwood Indus., Inc.*, 61 F.3d 1313, 1319 (7th Cir. 1995), *quoted in Home Valu, Inc.*, 213 F.3d at 963. Always, the question is how this court thinks the Supreme Court of Wisconsin would rule. *Home Valu, Inc.*, 213 F.3d at 963-64. However, federal courts sitting in diversity should hesitate to expand state law in the absence of any indication of intent by the state courts or legislature. *King v. Damiron Corp.*, 113 F.3d 93, 97 (7th Cir. 1997). Generally, when faced with two equally plausible interpretations of state law, the federal court should choose the narrower interpretation that restricts liability, rather than an expansive interpretation that creates substantially more liability. *Home Valu, Inc.*, 213 F.3d at 963.

First, HK Systems argues that Admiral cannot choose the attorney to defend HK Systems or refuse to pay for the attorney of HK Systems' choice because the policy

7

language does not expressly grant Admiral the right to choose counsel. This argument has little merit. The policy gives Admiral "the *right* and duty to defend the insured." (Stricker Aff., Ex. A at 1 of 13 (emphasis added).) Part of an insurer's right to defend includes the right to choose the attorney who will defend. The general rule is that the insurer controls the defense, which includes choosing the attorney, unless otherwise agreed or unless a conflict arises between insured and insurer. Eric Mills Holmes, *Appleman on Insurance 2d* § 136.1, at 4 (2003) ("The effect of [a duty to defend] provision is to give the insurer full control over the defense of the claim and control over the settlement process. . . . [T]he insured is required to surrender to the insurer all control over the conduct of the defense."); II Arnold P. Anderson, *Wisconsin Insurance Law* § 7.91 (5th ed. 2004) (summarizing the general rule in other jurisdictions as "[i]f there are no coverage issues, the insurance company should retain the right to control the direction of the litigation"); Allan D. Windt, *Insurance Claims & Disputes* § 4:20, at 368 (4th ed. 2001) ("If there is no such conflict, the insurer can hire counsel to represent both the insured's and the insurance company's interest in the litigation."). While some policies may expressly state that the insurer provides a defense "'by counsel of [the insurer's] choice,'" *see Newhouse by Skow v. Citizens Sec. Mut. Ins.* Co*.,* 176 Wis. 2d 824, 834 (1993) (quoting policy in that case), the absence of such language does not mean that the insurer has no right to choose the attorney or control the defense.

At present, the primary issue in this case is the effect of Admiral's reservation of rights on the duty to defend. In this court's view, three questions must be answered to decide HK Systems' motion: (1) whether a conflict of interest exists between the insured and insurer such that the insurer loses control of the litigation and the insured must have

independent counsel, (2) whether the insured or the insurer chooses independent counsel, and (3) whether the insurer's obligation to pay attorney's fees for independent counsel is limited by a measure of reasonableness.

HK Systems contends that its motion for partial summary judgment must be granted, mainly in light of five cases.[2]  However, the law is not as clear as HK Systems argues.  The Supreme Court of Wisconsin has not spoken directly on the present issues, no Seventh Circuit precedent directly controls, and there are compelling reasons not to accept the pertinent language from the Wisconsin Court of Appeals cases as the end of the story.  First, however, a summary of the five cases is necessary.

In the only decision potentially binding on this court, third parties sued Waste Management for negligent and intentional contamination of ground water, and Waste Management sought defense and indemnity from Fireman's Fund.  *Fireman's Fund Ins. Co. v. Waste Mgmt. of Wis., Inc.*, 777 F.2d 366, 367 (7th Cir. 1985).  Although Waste Management hired its own counsel, a shareholder at that law firm had relatives involved the case.  *Id.*  Fireman's Fund accepted the tendered defense, but reserved its rights regarding any liability for intentional wrongdoing.  *Id.* at 368.  Many months later, Fireman's Fund retained a different law firm to take over the defense of the case based on the first law firm's conflict of interest.  *Id.* at 367-68.  Allegedly, the law firm chosen by Fireman's Fund had represented Fireman's Fund for several years.  *Id.* at 368.  Waste Management objected to use of the second firm, and Fireman's Fund sued for declaratory judgment.  *Id.* It offered to pay the future attorney's fees of any firm mutually agreeable to Fireman's Fund

---

[2]*Fireman's Fund Ins. Co. v. Waste Mgmt. of Wis., Inc.*, 777 F.2d 366 (7th Cir. 1985); *Nowacki v. Federated Realty Group, Inc.*, 36 F. Supp. 2d 1099 (E.D. Wis. 1999); *Radke v. Fireman's Fund Ins. Co.*, 217 Wis. 2d 39 (Ct. App. 1998); *Jacob v. W. Bend Mut. Ins. Co.*, 203 Wis. 2d 524 (Ct. App. 1996); *Grube v. Daun*, 173 Wis. 2d 30 (Ct. App. 1992).

9

and Waste Management, but not any fees incurred by the first firm. *Id.* Waste Management took the position that it was entitled to counsel of its own choice because the insurer had reserved its rights. *Id.*

On appeal, the Seventh Circuit noted that because Fireman's Fund agreed to defend and indemnify against negligence claims but reserved rights on claims of intentional wrongdoing, the particular reservation of rights at issue created an immediate conflict of interest between insured and insurer. *Id.* at 368 & n.1. Waste Management would want any liability attributed to negligence, while Fireman's Fund would want any liability attributed to intentional injury. *Id.* at 368. The Seventh Circuit distinguished an Eleventh Circuit case in which an insured was found to have wrongfully refused an insurer's defense of a case under a reservation of rights based on late notice. *Id.* at 368 n.1. The Seventh Circuit noted that a reservation of rights based on late notice does not create a conflict of interest, as both insured and insurer would share the immediate goal of avoiding all liability and the coverage issue would arise only after the underlying suit was settled or litigated. *See id.*

The Seventh Circuit "agree[d] that where the insurer reserves rights the insurer does not also reserve the exclusive right to select counsel, particularly under the circumstances of this case." *Id.* at 369. However, the statement related only to past charges incurred with the first law firm. In the end, the Seventh Circuit approved the district court's equitable solution for Waste Management's future representation, which was to allow Waste Management to select new independent counsel, subject to the approval yet at the expense of Fireman's Fund. *Id.* at 370. According to the Seventh Circuit, "[t]here can be no more fair, sensible, and reasonable way for both parties to terminate this

collateral dispute." *Id.* In deciding the case, the Seventh Circuit did not clarify what state's

law it was applying, and cited only to an Illinois state case and the Eleventh Circuit case.

The Wisconsin Court of Appeals cases start with *Grube v. Daun*, in which the

court held that an insurer lost its contractual right to control the insured's defense by

wrongly refusing to defend. 173 Wis. 2d 30, 71, 74, 76 (Ct. App. 1992). Further, by

breaching its duty to defend, the insurer was estopped from raising any challenge to

coverage and was required to indemnify the insured up to the policy limits. *Id.* However,

in dicta the court noted:

> Rather than raising the issue in court, an insurer cannot
> deliberately reach its own conclusion on coverage and then
> maintain that a clause in the policy would have excused it from
> indemnifying had the coverage issue correctly been decided by
> a court originally. There are several procedures insurers can
> use to raise the coverage issue and thus retain their right to
> challenge coverage. The insurer and the insured could enter
> into a nonwaiver agreement in which the insurer would agree
> to defend, and the insured would acknowledge the right of the
> insurer to contest coverage. However, the insured is not
> obligated to sign such an agreement. Alternatively, the insurer
> could request a bifurcated trial or a declaratory judgment so
> that the coverage issue would be addressed separately by a
> court. *In addition, the insurer could give the insured notice of
> intent to reserve rights. When a reservation of rights is made,
> the insured can pursue his own defense not subject to the
> control of the insurer, but the insurer still would be liable for
> legal fees incurred.*

*Id.* at 75 (footnote omitted) (emphasis added).

In *Radke v. Fireman's Fund Insurance Co.*, the same panel as in *Grube* again

addressed a failure-to-defend situation. 217 Wis. 2d 39 (Ct. App. 1998). Fireman's Fund

had denied coverage and refused to defend its insured in a federal lawsuit. *Id.* at 41-42.

In its holding, the Wisconsin Court of Appeals found that the insurer had breached its duty

to defend. *Id.* at 41. In dicta the court stated:

11

This appeal might not have been necessary if Fireman's Fund had sought earlier judicial resolution of coverage as outlined in the *Grube* line of cases. Courts have outlined procedures that insurers can use to raise the coverage issue and still retain their right to challenge coverage: (1) the insurer and the insured can enter into a nonwaiver agreement in which the insurer would agree to defend, and the insured would acknowledge the right of the insurer to contest coverage; (2) the insurer can require a bifurcated trial or a declaratory judgment so that the coverage issue can be resolved before the liability and damage issues; or (3) the insurer can file a reservation of rights which allows the insured to pursue his or her own defense not subject to the insurer's control, but the insurer agrees to pay for the legal fees incurred. A more risky verison of the third alternative is for the insurer to not file a reservation of rights, but to simply reject the tender of defense and allow the insured to pursue his or her own defense.

*Id.* at 44-45. Fireman's Fund gambled with the final (i.e., fourth) option and, because it was wrong in determining that it had no duty to defend, waived any subsequent right to contest coverage. *Id.* at 49.

*Jacob v. West Bend Mutual Insurance Co.*, 203 Wis. 2d 524 (Ct. App. 1996), decided by a panel containing two of the *Grube* judges, comes closer to the present issues yet still is not completely on point. Insurer West Bend determined that its policy did not cover a third party's claim against its insured and reserved its right to deny coverage. However, it authorized the insured to hire its own lawyer and promised to pay the fees and related costs. *Id.* at 530. The attorney chosen by the insured wrote to West Bend and received written confirmation that West Bend would pay her fees and costs. *Id.* Later, the attorney chose to let default judgment be entered. *Id.* at 531, 534.

The Wisconsin Court of Appeals recognized that the issue was not whether West Bend had a duty to defend, but whether it properly discharged its duty. *Id.* at 536. The court found that West Bend did not breach its duty to defend:

12

> *Grube* expressly sets out how an insurer discharges this duty. An insurer has several options available when it wants to raise a coverage issue and retain its right to challenge coverage. One option requires the insurer to request a bifurcated trial on the issues of coverage and liability or a declaratory judgment on the coverage issue.
>
> Another option requires the insurer to give the insured notice of the insurer's intent to reserve its coverage rights. This allows the insured the opportunity to a defense not subject to the control of the insurer although the insurer remains liable for the legal fees incurred.
>
> The facts of this case clearly reveal that West Bend exercised this second option.

*Id.* (citations omitted). The court found that the insurer was not bound to the litigation tactics or strategy of the independent attorney selected by the insured – the insurer had no authority to intervene in or interfere with the relationship between the insured and the independent attorney. *Id.* at 537. "The fact remains that West Bend accorded [its insured] one of the options which *Grube* recognizes when the insurer intends to defend on the basis of lack of coverage–a 'paid for' defense by an attorney of the insured's own choosing." *Id.*

The case cited by HK Systems and most on-point was decided by a colleague of this court. *Nowacki v. Federated Realty Group, Inc.*, 36 F. Supp. 2d 1099 (E.D. Wis. 1999) (Goodstein, M.J.). Federated had been sued by a group of individuals for violations of federal law regarding real estate settlement practices, including certain misrepresentations and failure to disclose information. *Id.* at 1101. Federated tendered the complaint to its insurer, Continental Casualty, but two weeks later hired its own attorney. *Id.* at 1102. Shortly thereafter, Continental told Federated that it would assume the defense but reserved its rights under the insurance policy, stating that it would not provide coverage for any liability arising out of dishonest acts. *Id.* Federated said it wanted to pursue its own defense but at Continental's cost; Continental agreed to provide

13

Federated with independent counsel only if counsel was selected by mutual agreement. Continental intervened in the underlying lawsuit and sought a declaratory judgment that it was not obligated to reimburse Federated for prior attorney's fees and had no duty to defend because Federated refused to obtain mutually agreeable counsel. *Id.*

Magistrate Judge Aaron E. Goodstein identified the issue for resolution as which party controls the defense when the insurer reserves rights creating a conflict of interest. *Id.* at 1107. He found that *Grube* and *Jacob* directed "that a consequence for the insurer [reserving rights] is that the insured is allowed to select its own counsel at the insurer's expense." *Id.* at 1108. Magistrate Judge Goodstein read the Seventh Circuit's *Fireman's Fund* decision to permit the parties to mutually agree on counsel, but found that such a procedure was not required under Wisconsin law. The insured "was free to control its defense and select its own counsel," with the insurer liable for all attorney's fees. *Id.* at 1109.

A.    Effect of a Conflict of Interest

In its summary judgment motion, HK Systems seeks a declaration that Admiral does not have the right to control the defense of or to select counsel for HK Systems in the Quad litigation because it chose to defend under a reservation of rights. This court believes that the Supreme Court of Wisconsin would agree with HK Systems that if a real conflict of interest exists between insured and insurer, the insurer cannot control the defense. However, contrary to HK Systems' suggestion, the mere reservation of rights does not create a conflict automatically; instead, the reservation of rights must create opposition between the insured's and insurer's legal positions. Further, a loss of control does not mean a loss of the right to choose counsel.

14

*Fireman's Fund* does not support a finding that under Wisconsin law *any* reservation of rights results in a conflict of interest that requires an insurer to give up its right to control the defense. Instead, the Seventh Circuit recognized that certain reservations of rights, such as one based on an insured's untimely tendering of a claim, would not place the insured and insurer in opposing positions. Recently, District Judge David F. Hamilton provided a "classic example" of a conflict of interest:

> The victim alleges in Count One that the insured shot him intentionally and in the alternative in Count Two that the insured shot him negligently. Under a typical liability insurance policy, coverage is available for negligent acts but not for intentional acts. The insurer therefore would benefit from either a defense verdict or a finding of intentional wrongdoing. The insured, on the other hand, would benefit from either a defense verdict or a finding of negligence. Absent informed consent of both the insurer and the insured, an attorney trying to represent both the insured and the insurer would face an insurmountable conflict of interest.

*Armstrong Cleaners, Inc. v. Erie Ins. Exch.*, 364 F. Supp. 2d 797, 806 (S.D. Ind. 2005). But other reservations of rights, such as those based on late notice, *see Fireman's Fund*, 777 F.2d at 368 n.1, or those based on failure to comply with other policy conditions or regarding claims in excess of the policy limit, *see* Windt, *supra*, § 4:20, at 375-78, do not place the insured and insurer in opposing positions as to the underlying litigation.

*Grube*, *Jacob*, and *Radke* did not expressly address whether all reservations of rights result in a conflict of interest shifting control of the defense from insurer to insured. Instead, they spoke as though there were no exceptions. In other words, the courts spoke as if *any* reservation of rights by the insurer shifted control of the defense to the insured. Nevertheless, the pertinent language in *Grube* and *Radke* is dicta, and in *Jacob* the court did not discuss the particular basis for the insurer's reservation of rights.

15

The Supreme Court of Wisconsin has suggested, again in dicta, that no conflict of interest automatically arises from a reservation of rights. In *Iowa National Mutual Insurance Co. v. Liberty Mutual Insurance Co.*, the court addressed whether declaratory relief was available to an insurer who reserved rights regarding both the duty to defend and coverage based on untimely notice of a claim. 43 Wis. 2d 280 (1969). The insured argued on public policy grounds that declaratory relief should not be available when a conflict of interest exists between insured and insurer. *Id.* at 290. In response, the court stated that the insurer's defense of untimely notice did not necessarily raise a conflict of interest. *Id.*

At least one commentator has observed that some courts have found that a reservation of rights always creates a conflict of interest between insured and insurer, "apparently on the theory that the carrier, believing that there may not be coverage, might provide only a token defense and be uninterested in achieving the lowest possible settlement. This is not, however, the majority view, and it is not good law." Windt, *supra*, § 4:20, at 369. Thus, an insurer does not lose its right to control the defense or select defense counsel merely because the insurer issued a reservation of rights letter. *Id.* at 370.

Based on *Fireman's Fund*, *Iowa National*, and secondary sources, this court believes that the Supreme Court of Wisconsin would not find that *any* reservation of rights automatically creates a conflict of interest between insured and insurer, which divests the insurer of control of the defense. Instead, it is this court's view that *Fireman's Fund*, and certainly *Grube*, *Radke*, and *Jacob*, all recognize or suggest that a *real* conflict of interest based on opposing defenses of insured and insurer requires the insurer to give up control. Other case law and secondary sources recognize the same principle. *See, e.g., Am.*

16

*Motorists Ins. Co. v. Trane Co.*, 544 F. Supp. 669, 673 (W.D. Wis. 1982) (stating that where a conflict does exist, "the insurer must either provide an independent attorney to represent the insured or pay the costs incurred by the insured in hiring counsel of the insured's own choice"), *aff'd*, 718 F.2d 842 (7th Cir. 1983); II Anderson, *supra*, § 7.91, at 7-79 ("The insurance company relinquishes real control of the litigation when there is a conflict.").

Here, HK Systems has not sufficiently discussed whether a conflict of interest exists in this case. When Admiral wrote its reservation of rights letter Quad/Graphics had not yet filed suit. Thus, the reservation of rights letter did not address whether specific claims were covered while others were not. Further, HK Systems does not discuss whether in light of the complaint filed after the reservation of rights letter an actual conflict of interest exists.

Nevertheless, the court believes that a conflict of interest does exist. The reservation of rights letter does not rely on defenses such as late notice of Quad/Graphics' claim, but rather on exclusions under the CGL policy for contractual liability, pollution, and damage to property, and under the excess professional liability policy for contractual liability, pollution, and claims based on warranty. (Stricker Aff., Ex. C at 4-5.) As the complaint filed by Quad/Graphics includes claims of breach of contract, negligence, breach of express warranty, product liability, breach of implied warranties, and violation of deceptive trade practices law (Sullivan Aff., Ex. A), it appears that there is a conflict, as it may benefit Admiral if HK Systems is found liable on certain claims, such as breach of contract or warranty, and not on others, such as negligence. Further, Admiral does not argue in its response to the motion for summary judgment that under the facts of this case

17

a real conflict does not exist or that it has any right to control the defense in the sense of determining litigation strategy.

Therefore, summary judgment will be granted for HK Systems on the limited point that because of the conflict of interest caused by the particular reservation of rights in this case, Admiral has no right to control HK Systems' defense in the Quad litigation.

B.    Who Chooses Independent Counsel

Now, the question becomes whether a reservation of rights creating a conflict of interest and loss of control of the defense requires that the insured be able to choose its own counsel. An insurer's loss of control due to a conflict of interest means that the insurer cannot intervene in or interfere with the insured's relationship with its attorney and with the course of the defense. *See Jacob*, 203 Wis. 2d at 537. While this court agrees that Admiral cannot control the defense, i.e., HK Systems' defense must be completely independent of Admiral, it will not broadly declare that Admiral has no say in selection of counsel. This court is unconvinced that the release of "control" means that the insurer loses the ability to choose counsel.

As discussed above, *Fireman's Fund* does not mandate that an insurer turn selection of the attorney over to the insured. Instead, it indicated that in the circumstances of that case, where the insurer's tendered law firm was not necessarily independent and where the insurer delayed in disapproving the insured's chosen attorney, the insurer could not insist on exclusive control over what attorney was chosen and could not avoid paying past attorney's fees. The insurer's involvement in selecting independent counsel was not eliminated; regarding the future progress of the underlying case, the Seventh Circuit approved the selection of new independent counsel subject to the approval of Fireman's

Fund. 777 F.2d at 370. As for the past representation costs, the court's reference to the particular circumstances of the case suggests that different circumstances – such as the tendering of truly independent counsel without delay – could change the propriety of abolishing the insurer's exclusive right.

Neither *Grube* nor *Radke* mandates that an insurer relinquish selection of the attorney to the insured. These cases do not convince this court that Admiral must allow HK Systems to choose its own attorney and pay whatever the costs merely because of its reservation of rights. Besides writing the language quoted above as non binding dicta, *see* II Anderson, *supra*, § 7.92 ("*Grube* did not address whether the insured had the right to select defense counsel if the insurer defends under a reservation of rights."), the *Grube* court cited no authority whatsoever for the italicized portion of the statement.[3] *Radke* contains similar dicta without authority. Moreover, the pertinent language of *Grube* and *Radke* is not as broad as HK Systems argues. The *Grube* court stated only that following a reservation of rights the insured "can pursue his own defense not subject to the control of the insurer." 173 Wis. 2d at 75. The court did not in any way equate control with selection of the attorney. In other words, the court did not state that an attorney chosen by the insurance company but otherwise independent could not satisfy the duty to defend.

Further, the paragraphs quoted above from *Grube* and *Radke* do not state that the given options are the exclusive options for an insurer who wishes to raise coverage issues and to avoid breaching the duty to defend. *Radke* actually adds another option to

---

[3]One authority on Wisconsin law has stated that the paragraph quoted above from *Grube* is "incomplete and inaccurate" to the extent that it suggests that an insurer is not entitled to deny coverage at its peril but must instead bring an action for declaratory judgment or reserve its rights. II Anderson, *supra*, § 7.38, at 7-32. Anderson also criticizes *Grube* for its statement that insurance contracts are contracts of adhesion, in conflict with Wisconsin Supreme Court law. *Id.*, § 7.67, at 7-51.

19

the *Grube* options.  Cases from the Supreme Court of Wisconsin discussing an insurer's options similarly do not write in exclusive language.  For instance, in *Capitol Indemnity Corp. v. Morris*, the supreme court wrote that when an insurer receives notice of a claim against its insured "[i]t would not be unreasonable to expect the insurance company to do any of the following," including defending its insured with or without a reservation of rights agreement or bringing an action for declaratory relief.  46 Wis. 2d 527, 532-33 (1970).  The court did not state that these were the only options.  Similarly, the court in *Newhouse* stated that the "proper procedure" is for an insurance company disputing coverage to intervene and request a bifurcation and stay, but it did not expressly indicate that bifurcation and stay were the sole means for an insurer to protect its coverage defenses without breaching its duty to defend.  176 Wis. 2d 824, 836 (1993).  *Newhouse* thereafter recognized that the "best approach" is for the insurance company to defend under a reservation of rights.  176 Wis. 2d at 837, 839.

Contrary to HK Systems' arguments, *Jacob* did not hold that West Bend was *required* to let the insured choose its own attorney and to pay any amount that the attorney charged.  *Jacob* holds merely that an insurer may choose to satisfy its duty to defend by allowing the insured to choose the attorney and paying the bill.  Because West Bend from the beginning gave the insured the option of choosing the attorney, the questions of who was entitled choose the attorney and how much must be paid toward the attorney were not at issue.  *See id.* at 530.  Further, the attorney chosen by the insured wrote to West Bend and received written confirmation that West Bend would pay her attorney's fees and costs. *Id.*  The court's comment that the *Grube* reservation of rights option leads to a paid-for

defense by an attorney of the insured's choosing was both dicta and unsupported by any authority cited in the opinion.

It is interesting that *Grube*, *Jacob*, and *Radke* do not appear to reflect the view of numerous judges on the Wisconsin Court of Appeals. Instead, they are repetitive statements by the same three or four judges.

This court respectfully disagrees with the reasoning of Magistrate Judge Goodstein which suggests that the *Grube* line of cases support a finding that Admiral should lose any interest in selecting counsel. Although Magistrate Judge Goodstein's *Nowacki* decision is notable authority, other authority points to a contrary conclusion; of particular note is a Milwaukee County Circuit Court case.[4]

Writing a detailed decision on the matter, Milwaukee County Circuit Court Judge David A. Hansher did not feel compelled to follow *Grube* and its progeny to a conclusion that in a conflict of interest situation the insured assumes the right to choose counsel. *See Secura Ins. v. Sizzler USA Franchise, Inc.*, No. 00-CV-008314 (Milwaukee County Cir. Ct. June 7, 2001). Judge Hansher identified the primary issue before him as "whether an insurer who agrees to defend under a reservation of rights retains the right to choose independent defense counsel for its insured." *Id.*, slip op. at 7. Notwithstanding the Wisconsin Court of Appeals cases and *Nowacki*, he found that the issue was not settled under Wisconsin law. *Id.*

---

[4]Wisconsin circuit court opinions are acceptable persuasive authority. *Kuhn v. Allstate Ins. Co.*, 181 Wis. 2d 453, 468 (Ct. App. 1993) ("Section 809.23(3), Stats., permits reference to circuit court decisions. While a circuit court decision is neither precedent nor authority upon which this court may base its decision, many of them are highly persuasive and helpful for their reasoning." (citation omitted)), *aff'd*, 193 Wis. 2d 50 (1995), *superseded by statute on other grounds*, Wis. Stat. § 632.32(5); *see also Brandt v. Labor & Indus. Review Comm'n*, 160 Wis. 2d 353, 361-65 (Ct. App. 1991), *aff'd*, 166 Wis. 2d 623 (1992).

21

Following an extensive review of the authorities, including *Grube, Jacob, Radke*, and *Nowacki*, Judge Hansher held that when an insurer issues a reservation of rights letter, the insurer retains the right to choose independent counsel "so long as the selected counsel is truly independent and the insurer acts in good faith." *Id.* at 15. The insured is not granted the right to select its counsel. *Id.* at 7-15. Similar to this court's reasoning above, Judge Hansher found that the *Grube* and *Radke* courts did not indicate that the three options listed in *Grube* were the exclusive means for preserving such defenses, and that the *Radke* court implicitly recognized that the list was nonexclusive inasmuch as it added a fourth option. Regarding *Jacob*, Judge Hansher found that the issue in that case did not include whether the insurer could select defense counsel:

> In other words, it is not clear from the *Jacob* decision whether the selection of independent defense counsel by the insurer would constitute a defense for the insured "not subject to the control of the insurer." The *Jacob* decision did not, in this court's view, foreclose that possibility. In fact, the *Jacob* court's recognition of the fact that the insurer "had no authority to intervene in, or interfere with" the relationship between the insured and the insured's defense counsel would seem to allow for the selection of defense counsel by the insurer, so long as it was truly independent, (i.e., the insurer did not interfere or intervene in the relationship between the insured and defense counsel). Therefore, this court concludes that the precise question presented in this case, namely, whether an insurer may issue a reservation of rights and select independent defense counsel for the insured consistent with its duty to defend, has not been settled by (and in fact, has not even been addressed by) the courts of this state.

*Id.* at 10.

Judge Hansher observed that *Nowacki* was factually on point, but rejected its reasoning, noting that lower federal court decisions are not binding on state courts. *Id.* at 11. Instead, Judge Hansher concluded that the better-reasoned approach was one set

forth by a federal court in Michigan, which struck the proper balance between the rights of the insurer and the insured:

> [A]n insurer complies with its duty to defend when, after it has reserved its rights to contest its obligation to indemnify, it fully informs the insured of the nature of the conflict and selects independent counsel to represent the insured in the underlying litigation. The insured has no absolute right to select the attorney himself, as long as the insurer exercises good faith in its selection and the attorney selected is truly independent.

*Id.*, slip op. at 14 (quoting *Cent. Mich. Bd. of Trs. v. Employers Reins. Corp.*, 117 F. Supp. 2d 627, 634-35 (E.D. Mich. 2000)).

Also, Judge Hansher pointed to the language of the insurance policy which gave the insurer

> not only the *duty* but also the *right* to defend. Surely, the *right* to defend must mean something more than the right to pay for defense counsel selected by the insured. Allowing the insurer to select independent defense counsel vindicates its rights under the policy. Should the insurer fail to exercise good faith in its selection of independent defense counsel, the insured's remedy will lie in a cause of action against the insurer for bad faith.

*Id.* at 15. Further, the court cited the attorney's ethical obligations as a safeguard for the insured. *Id.*

Like the policy in *Secura*, the policy in the present case gives Admiral not only the duty, but the right to defend. Unless Admiral breaches its duty to defend, which it has not done here as far as this court can determine, it should not lose its right to defend merely because it reserved its rights.

This court is mindful that the *Grube* line of cases has been found by some Wisconsin circuit courts to instruct that an insurer loses its right to choose counsel when it reserves its rights. For instance, in a two-page decision, a circuit court for Menominee

23

and Shawano Counties found that the dicta in *Grube* had been adopted in *Jacob* and *Radke* and that the language allowing the insured a defense "not subject to the control of the insurer" meant that the insured could choose his own defense attorney at the insurer's expense. *Nelson v. Matsche*, No. 02CV120, slip op. at 1-2 (Menominee & Shawano County Cir. Ct. Dec. 4, 2002). However, this court finds *Nelson*, with its abbreviated reasoning, unconvincing.

Outside of the *Grube*-based cases, other case law points to a rule that allows the insurer to select an independent attorney. Most importantly, in *Iowa National* the Supreme Court of Wisconsin recognized that reservation of rights agreements are in the public interest and are to be encouraged because they temporarily protect the insured "even though it may turn out he was not entitled to such protection." 43 Wis. 2d at 286. In its discussion, the court acknowledged that such agreements "grant[] no new rights to the insured." *Id.* at 286-87.

At the very least, the creation of an unlimited fund for payment of defense counsel must be considered a new substantive right for the insured. Even the shift of the right to choose counsel appears to be a new substantive right for the insured. Neither seems justified under *Iowa National*, which is the only indication by the Wisconsin Supreme Court of its possible thoughts in this matter.

Several years before *Grube*, U.S. District Judge Barbara B. Crabb came to a conclusion contrary to *Nowacki*. An insured, Trane Company, was sued regarding a component part it provided for liquid natural gas plants, and tendered defense of this action to its insurers. *Am. Motorists Ins. Co. v. Trane Co.*, 544 F. Supp. 669, 673 (W.D. Wis. 1982), *aff'd*, 718 F.2d 842 (7th Cir. 1983). Employers Mutual refused to defend Trane. *Id.*

24

In a declaratory action about coverage and the duty to defend, Employers argued that it was relieved of its duty to defend because of a conflict of interest between the insured and insurer regarding the underlying litigation. Judge Crabb held that a conflict of interest does not relieve the insurer of its duty to defend. She opined that where a conflict exists, "the insurer must either provide an independent attorney to represent the insured or pay the costs incurred by the insured in hiring counsel of the insured's own choice." *Id.* at 686. Because Employers took neither course but instead refused to defend completely, it breached its duty to defend.

Also prior to *Grube*, a circuit court judge in Taylor County, Wisconsin, held that when an insurance company reserves it rights, the insured does not as a result obtain the absolute right to choose counsel. *Thresherman's Mut. Ins. Co. v. Scrap Processing Co.*, No. 92 CV 21, slip op. at 2 (Taylor County Cir. Ct. Oct. 5, 1992). Finding no Wisconsin case law on point at that time, the court looked to other jurisdictions and followed a general rule that where a conflict of interest exists between insured and insurer, the insurer must either provide an independent attorney or allow the insured to choose while paying the costs. *Id.* at 3. The option is the insurer's, not the insured's. *Id.* at 3-4. The court found sufficient safeguards in the insurer's duty of good faith and the attorney's ethical obligations to insure that the representation by an attorney chosen by the insurer is truly independent. *Id.* at 4.

Reference to cases from other jurisdictions is not all that helpful on this issue. As recognized by the authors of *Couch on Insurance*, the question of who chooses the independent counsel is jurisdiction-specific, and the views of the various jurisdictions

cannot be reconciled.  Lee R. Russ & Thomas F. Segalia, *Couch on Insurance* § 202:35, at 202-87 (3d ed. 1999).[5]

However, the Michigan federal court case that *Secura* references, as well as another Michigan federal court case, are right on point and suggest the same outcome as *Secura*, *Trane*, and *Thresherman's*.  District Judge Robert Holmes Bell addressed the question of whether an insured is entitled to choose counsel at the insurer's expense when an insurer reserves its right to contest coverage.  *Fed. Ins. Co. v. X-Rite, Inc.*, 748 F. Supp. 1223, 1224 (W.D. Mich. 1990).  After being sued, the insured, X-Rite, hired its own law firm, then tendered notice two months later to its insurer.  The insurer reserved its right to deny coverage on certain claims, was unwilling to continue with the insured's chosen law firm, and wanted to substitute another law firm.  *Id.* at 1225.  The insured and its chosen law firm then went through mediation and settled the case.  *Id.*  The insurer filed a declaratory judgment action seeking a ruling that the insured had breached the insurance contract, and the insured counter-claimed for the amount of the settlement as well as costs and attorneys fees from the underlying litigation.  *Id.*

_____

[5]According to *Couch*, "[t]here is considerable authority that the insured has the right to make that selection."  *Id.*; *see also* James L. Rigelhaupt, Jr., Annotation, *Construction and Application of Provision of Liability Insurance Policy Expressly Excluding Injuries Intended or Expected by Insured,* 31 A.L.R.4th 957, 976 (1984) (suggesting that when a conflict of interest arises between insured and insurer, the insured should be "given the right either to accept an independent attorney selected by the insurer or to select an attorney himself to conduct his defense").  Yet, other jurisdictions allow the insurer to select the independent counsel or require mutually agreeable counsel.  Russ & Segalia, *supra*, at 202-90 to -91.

See also Todd R. Smyth, Annotation, *Duty of Insurer to Pay for Independent Counsel when Conflict of Interest Exists between Insured and Insurer*, 50 A.L.R.4th 932, 938 (1986) (stating, in summarizing law nationwide, that "[m]ost courts appear to allow the insured to select independent counsel when a conflict of interests arises . . . .  Several jurisdictions have allowed an insurer to retain the right of reasonable participation in the selection of independent counsel . . . .  Finally, one court has indicated that an insurer has the option of either providing independent counsel or allowing the insured to choose . . . .").

In *Federal Insurance Co. v. X-Rite, Inc.*, 748 F. Supp. 1223, 1224 (W.D. Mich. 1990), the district court judge recognized "a growing body of case law which would give the insured an absolute right to choose counsel where a conflict exists."  *Id.* at 1228.  But he also noted that "[m]any cases have . . . recognized a right in the insurer to determine whether to provide independent counsel of its choosing or to reimburse the insured for counsel of its choice."  *Id.*  Thus, "[p]recedents from other jurisdictions . . . offer little definitive guidance as to the direction Michigan law should be expected to take."  *Id.*

Judge Bell found that under the facts of his case, the insured could not insist on counsel of its choice at the insurer's expense. *Id.* He concluded that the insured had ignored the proposed substitution of counsel based on a questionable interpretation of Michigan law and cavalierly disregarded the policy language giving the insurer the "right" to defend X-Rite. *Id.* at 1228-29.

> Unless "right to defend" is to be deemed mere surplusage, which has not been argued, it must be viewed as conferring upon Federal some prerogative with respect to the defense beyond simply paying expenses. This prerogative cannot, in a conflict of interest situation, include an absolute right to control the litigation. On the other hand, X-Rite's apparent presumption that the conflict of interest, posing a potential of prejudice to its interests, automatically and completely negated all prerogative, is not reasonable.

*Id.* at 1229. Because X-Rite voluntarily retained the services of its law firm, the insurer was not obligated to reimburse X-Rite for the legal expenses. *Id.* at 1230.

In *Central Michigan Board of Trustees,* cited by Judge Hansher, the insurer reserved its right to contest coverage for intentional torts, but tendered a law firm to represent the insured. The insured declined the services of the law firm and hired his own attorney, then later sued to recover the attorney's fees. District Judge David M. Lawson agreed with the *X-Rite* case and determined that the insured was not entitled to insist on selecting the attorney and was not entitled to reimbursement. 117 F. Supp. 2d at 634-35, 637.

Several secondary authorities also state a preference for a rule that allows the insurer to choose, or at least to approve of, independent counsel.

> [I]n the event of a conflict of interest, the insurer, absent an informed consent by the insured to less, has a choice between hiring independent counsel to control the defense or allowing the insured to select private counsel (to be paid for by the

27

insurer) to control the defense.  There is no reason why the latter alternative should be forced on the insurer.

Windt, *supra*, § 4:22, at 383-84.  Arnold P. Anderson, in a treatise on Wisconsin insurance law and the law in other jurisdictions in general, commented that

> [t]he insurance company relinquishes control of the litigation when there is a conflict, but it should still have a role in the selection of independent counsel.  This allows the insurance company some measure of protection against the twin evils of overbilling and overlitigating by counsel selected by the insured.

II Anderson, *supra*, § 7.91, at 7-79; *see also* Holmes, *supra*, § 136.9[A], at 70-71 (suggesting that the duty to defend be separated between the right to control the defense and the obligation to pay for the costs of the defense, and that the insured be allowed to choose its own counsel to be paid by the insurer, with approval by the insurer of the selection "to avoid problems at the conclusion of the case regarding payment of the counsel's fee").

As a federal court hearing a diversity case, this court should refrain from expanding liability.  Creating unlimited liability for payment of defense counsel fees when an insurer reserves rights would expand an insurer's liability.  Allowing an insured to choose counsel with no approval right or control over defense costs would also expand an insurer's liability.  On the other hand, allowing the insurer to choose independent defense counsel would not change the parties' liabilities or obligations in any way.

The arguments in *Secura* regarding the insurer selecting independent counsel itself or the insured doing so are convincing.  Judge Crabb's decision in *Trane* also supports this view, and, importantly, the Wisconsin Supreme Court's dicta that a reservation of rights is to be encouraged and grants no new rights to the insured buttresses

28

this view.  Moreover, the Michigan cases cited by Admiral and the secondary authorities consulted persuade this court that the insurer may select independent counsel so long as such counsel is truly independent and the insurer acts in good faith.  Alternatively, as in *Jacob*, the insurer may allow the insured choose the counsel.  The choice should be the insurer's, however.  Finally, leaving the right to choose counsel with the insurer best comports with this federal court's role when hearing a diversity case.

For all of the above-stated reasons, this court believes the Supreme Court of Wisconsin would *not* find that the insured has an absolute right to choose counsel at whatever expense.  Instead, this court concludes that the supreme court would hold that the insurer retains the right either to choose independent counsel or to allow the insured to choose counsel at the insurer's expense.[6]

Here, Admiral tendered Robert Burrell of Borgelt Powell as defense counsel. HK Systems argues that even if the rule is that Admiral can choose counsel, Admiral cannot choose Burrell in this case because he is not truly independent.  With due regard for the record, this court must find that a factual question exists as to the independence of Burrell.  Burrell's affidavit states that he has not "personally" represented Admiral in the past five years, but that his firm *has* represented Admiral within the last two years.  (Burrell Aff. ¶ 5.)  It is possible that regardless of his firm's involvement in other cases Burrell may be able to act independently, but on the facts presented whether that is true is unclear.

According to Admiral's answers to interrogatories, based on information from Borgelt Powell, the firm represented Admiral *or* one if its insureds in fourteen cases

---

[6]Admiral does not dispute, and all authorities consulted indicate that in a reservation of rights conflict situation where the insured chooses counsel, counsel's fees are to be paid by the insurer.  The remaining question is the extent of the insurer's payment.

29

between 2000 and 2003. (Krutz Aff. filed 5/25/04 at 3.) If Burrell and his firm represented mostly Admiral's insureds in independent matters (such as other reservation of rights conflict situations), Burrell and his firm may indeed be able to function independently. If Burrell and his firm have mainly represented Admiral itself, however, there may be a lack of independence due to the attorney/client relationship of Admiral and the Borgelt Powell law firm. HK Systems has presented docket sheets showing that Timothy J. Strattner of Borgelt Powell has represented Admiral itself in at least three cases in Wisconsin courts. But those docket sheets suggest that Strattner also represented Admiral's insureds. This court cannot determine the depth and extent of the relationship between Strattner of Borgelt Powell and Admiral from the docket sheets alone. Thus, the present record does not establish whether Burrell and his firm are or are not truly independent and summary judgment cannot be granted in HK Systems' favor.

In any event, Admiral has shifted to its second option, letting HK Systems choose the attorney, so a holding that Admiral can demand representation by Borgelt Powell appears unnecessary. The only hitch is Admiral's caveat regarding fees.[7] In its letter of September 20, 2002, Admiral stated that it was "willing to accept HK Systems' selection of the Mayer Brown firm, in lieu of Borgelt Powell, as defense counsel for the claims anticipated from the Quad/Graphics loss, subject to agreement as to the reasonable amount of fees to be charged by that firm for services actually related to defense of the claims." (Stricker Aff., Ex. C at 3.) The question therefore remains whether, as part of

_____

[7]In its opposition brief, Admiral suggests that because HK Systems rejected Burrell's representation and chose its own attorney, it voluntarily assumed the costs of that representation and Admiral now cannot be compelled to pay for HK Systems' choice. (*See* Def.'s Br. in Resp. at 14.) However, in its conclusion Admiral argues that this court should hold only that Admiral "retains the right to participate in the defense of its insured by selecting counsel to defend the insured and paying a reasonable rate for that counsel's services." (*Id.* at 24.) Moreover, in the reservation of rights letter of September 20, 2002, Admiral stated that it was willing to accept Mayer Brown in lieu of Borgelt Powell subject to a reasonable cap on fees.

30

exercising its option to allow the insurer to choose independent counsel, an insurer can condition its permission with a cap on defense costs or the rate charged by the selected attorney.

C.     Payment of Reasonable Attorney's Fees

No Wisconsin case appears directly on point as to whether the insurer must pay all of the fees charged by the chosen attorney or whether there is some "reasonableness" cap.  However, in *Patrick v. Head of the Lakes Cooperative Electric Ass'n*, the Wisconsin Court of Appeals addressed an insurer's responsibility for attorney's fees when the insurer breached its duty to defend.  98 Wis. 2d 66 (Ct. App. 1980).  The court stated in passing that the insured was "entitled to actual attorney's fees," *id.* at 72, but nevertheless reviewed the attorney's fees for reasonableness, *id.* at 72-73.  The court indicated factors to be considered such as the amount and character of the services, the character of the litigation, the amount of money or property involved, and the professional skill necessary, then held:  "We have reviewed the statement submitted by the Cooperative's attorney with these factors in mind and conclude that both the time spent and the amount charged for the defense of the Patrick action were reasonable."  *Id.* at 73.

If the payment for attorney's fees owed by an insurer who breached the duty to defend is subject to a reasonableness standard, the fees owed by an insurer who does not breach that duty and who instead reserves its rights, as encouraged by public policy, *see Iowa Nat'l*, 43 Wis. 2d at 286, should also be subject to a reasonableness standard.

Moreover, secondary sources referenced by this court and addressing this issue suggest uniformly that the insurer should be required to pay only reasonable fees incurred.  See Russ & Segalia, *supra*, § 202:34, at 202-87 ("An insurer's obligation to

reimburse independent counsel is limited to reasonable attorney's fees and disbursements. The reasonableness of such costs is judged by the custom and practice in the particular jurisdiction."); Holmes, *supra*, § 136.7 ("[I]f the insurer has reserved its right to deny coverage, the insurer cannot compel the insured to surrender control of the litigation. In this situation, the insured may be entitled to hire its own counsel, and the insurer may be required to pay the reasonable cost of the independent counsel."); Windt, *supra*, § 4:22 at 383 ("If the insured is allowed to select defense counsel, the insurer should be required to pay only the reasonable fees incurred."); Rigelhaupt, *supra*, at 976 ("[I]f the insured elects to choose his own attorney, the insurer must assume the reasonable costs of the defense provided.").

Even cases from other jurisdictions where the insured was determined entitled to choose counsel limit payment of fees by the insurer to a "reasonable" amount. See, e.g., *U.S. Fid. & Guar. Co. v. Louis A. Roser Co.*, 585 F.2d 932, 941 (8th Cir. 1978) ("USF&G must now reimburse appellant for the fair and reasonable value of the services rendered by appellant's independent counsel in defending the Kemp action."); *Armstrong Cleaners, Inc.*, 364 F. Supp. 2d at 801 ("[T]he policyholders are entitled to select their own counsel to defend the underlying claim, subject to reasonable approval by the insurer, with reasonable fees and expenses paid by the insurer."); *San Diego Navy Fed. Credit Union v. Cumis Ins. Soc'y, Inc.*, 162 Cal. App. 3d 358, 375 (1984) ("[W]here there are divergent interests of the insured and the insurer brought about by the insurer's reservation of rights based on possible non coverage under the insurance policy, the insurer must pay the reasonable cost for hiring independent counsel by the insured."), *superseded by statute*, Cal. Civ. Code § 2860.

This court believes that regardless whether the Supreme Court of Wisconsin would find that an insured may choose its own defense counsel upon an insurer's reservation of rights or instead, that the insurer retains the right to either choose independent defense counsel or allow the insured to choose, the supreme court would find that the insurer's responsibility for defense costs extends only to a reasonable charge. Further, a reasonableness limitation comports with this court's role in hearing a diversity case, i.e., liability should be controlled rather than expanded.

HK Systems submits that this court is bound by a Seventh Circuit case to find that whatever amount HK Systems' attorneys charge is a reasonable amount as a matter of law because it is what the market will bear. However, the case cited does not establish that Mayer Brown's charges are reasonable as a matter of law. In *Medcom Holding Co. v. Baxter Travenol Laboratories, Inc.*, the court addressed an indemnity agreement requiring reimbursement for "'reasonable attorneys' fees.'" 200 F.3d 518, 518 (7th Cir. 1999) (quoting the contract in the case). Judge Easterbrook wrote that reasonableness should be "assessed using the market's mechanisms" and that if bills were paid, it strongly implies that they met market standards. *Id.* at 520; *see also Balcor Real Estate Holdings, Inc. v. Walentas-Phoenix Corp.*, 73 F.3d 150, 153 (7th Cir. 1996) (stating that "the best guarantee of reasonableness is willingness to pay"). However, the question addressed in *Medcom* was whether the attorney bills at issue met "market standards of detail" or whether, instead, their omission of certain information caused a reimbursement problem. *Medcom*, 200 F.3d at 520. The court indicated that the indemnity clause required "reimbursement for commercially-reasonable fees no matter how the bills are stated." *Id.* *Medcom*'s discussion of what constitutes commercially-reasonable fees is thus helpful, but

33

not dispositive. Further, as recognized by that court, a "moral hazard" comes into play in situations where a party might take additional risks and run up extra costs if someone else pays the tab. *Id.* at 521. The court remanded for an assessment of whether the fees in that case were "reasonable (that is, were they fees that commercial parties would have incurred and paid knowing that they had to cover the outlay themselves)?" *Id.* The same moral hazard exists in this case. That HK Systems has been paying Mayer Brown's bills does not establish that it would have done so if there were no hope of recovering those payments through the present litigation.

Here, there is a question as to what billing rates and amount of compensation are reasonable. HK Systems provides insufficient evidence that it would have paid Mayer Brown's rates if there was no possibility of reimbursement (in whole or in part) by Admiral. Further, Mayer Brown's lead attorney states that his fee of $495 per hour is the norm, while the attorney at Borgelt Powell states that his firm normally charges between $105 and $145 per hour range for insurance defense litigation pending in the state of Wisconsin. Burrell states that he would have represented HK Systems for Admiral at those rates. (Burrell Aff. ¶¶ 2-4.) One of Admiral's affiants states that "[t]here is obviously no issue as to the qualifications of either Attorney Burrell or the Mayer firm to handle this litigation" (Gass Aff. ¶ 5), suggesting that either attorney, and thus either rate, may be acceptable. Therefore, the market standard for this type of litigation in this geographic area is a question of fact preventing the granting of summary judgment in HK Systems' favor.

While the evidence in the record is sufficient to justify denial of HK Systems' partial summary judgment motion on this point, the court notes that the Wisconsin Law Journal's recent summary of the state's largest law firms reflects a wide range of billing

34

rates for Wisconsin law firms, supporting the conclusion that there is a question of fact concerning what rates are reasonable. *See* Sarah McQuin & Jane Pribek, *Wisconsin's Largest Law Firms: Top Firms 2004 Table*, Wis. L.J., Dec. 2004, at 4-7. According to the article, Foley & Lardner partners charge $411 per hour on average; Michael Best & Friedrich partners charge between $200 and $395 per hour; partners at Gonzalez, Saggio & Harlan charge between $140 and $280 per hour; and partners at Lindner & Marsack charge an average of $263 per hour. *Id.*

CONCLUSION

For the foregoing reasons,

IT IS ORDERED that HK Systems' motion for partial summary judgment is granted to the extent that this court holds and declares that due to the conflict of interest from the reservation of rights in the Quad litigation, Admiral has no right to "control" HK Systems' defense in that case and is liable for legal fees incurred in the future by HK Systems in the Quad litigation (up to a reasonable amount).[8]

IT IS ORDERED that in all other respects, including the right to choose independent counsel and a cap on attorney's fees, the motion for partial summary judgment is denied.

Further, the court sees no reason to delay a final decision concerning the right to choose independent counsel and the reasonableness of such fees, even though Admiral has not filed a cross-motion for summary judgment. *See Spitz v. United States*, 432 F. Supp. 148, 150 (E.D. Wis. 1977) ("Although the plaintiffs have not moved for

---

[8]In its opposition brief, Admiral argues that it cannot be liable for attorney's fees incurred by HK Systems prior to the filing of the complaint in the Quad litigation. The present orders do not address the starting point for fees or the amount of fees, but rather simply declare that in the ongoing Quad litigation Admiral does owe HK Systems a reasonable amount toward Mayer Brown fees.

35

summary judgment . . . a court may grant summary judgment to a nonmoving party when it appears from the record that there is no factual dispute and the nonmovant is entitled to summary judgment as a matter of law.").

Therefore,

IT IS FURTHER ORDERED and declared that Admiral has the right to allow HK Systems to choose counsel subject to a limitation that the fees charged and reimbursed be reasonable, and partial summary judgment is granted in Admiral's favor on this issue.

IT IS FURTHER ORDERED that a telephonic status conference shall be held on July 21, 2005, at 11:00 a.m., regarding further proceedings in this case and the pending motion to compel.  The court will initiate the call.

Dated at Milwaukee, Wisconsin, this 24th day of June, 2005.

BY THE COURT

s/ C. N. CLEVERT, JR.
C. N. CLEVERT, JR.
U. S. District Judge